CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for RJKp
DEC 17 2010
JULIA C. DUDLEY, CLERK
BY: /s/ H. McDonald
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| JOHN LAMONT MCKINNON, <br> Plaintiff, | Civil Action No. 7:10-cv-00220 |
| v. | **MEMORANDUM OPINION** |
| BRYAN WATSON, et al., <br> Defendants. | By: Hon. Jackson L. Kiser <br> Senior United States District Judge |

Plaintiff John Lamont McKinnon, a Virginia inmate proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 42 U.S.C. § 1343. Plaintiff names as defendants Bryan Watson, Warden of the Wallens Ridge State Prison ("WARSP"); Mr. Harvey, the Assistant Warden; Treatment Program Supervisor ("TPS") Hensley; and CIRC Osbourne. Plaintiff alleges that the defendants violated his First Amendment right to the free-exercise of religion. The defendants filed a motion for summary judgment, and plaintiff responded, making the matter ripe for disposition. After reviewing the record, I grant the defendants' motion for summary judgment.

I.

The record reveals the following facts. Plaintiff is an inmate at the WARSP and is an adherent of the Nation of Islam, a religion recognized by the Virginia Department of Corrections ("VDOC"). On July 27, 2009, plaintiff filled out an application to be approved for the Common Fare Diet ("Diet"), which is kosher and complies with the religious dietary dictates of the Nation of Islam. On July 31, 2009, the Institutional Classification Authority approved plaintiff's request for the Diet. On August 6, 2009, Osborne submitted plaintiff's paperwork to the VDOC's Central Classification Services ("CCS") to review of his request. The CCS is the only component within the VDOC that may approve Diet applications.

In response to plaintiff's question about the status of his Diet application, a staff member told him that the CCS never received his application. Plaintiff, believing that the paperwork had not been submitted, requested on November 3, 2009, that TPS Hensley "look into the matter" of Osborne's alleged refusal to send plaintiff's paperwork to the CCS. On November 17, 2009, the CCS mailed the paperwork back to WARSP with a request for additional information. Osborne resubmitted the request with additional, requested paperwork back to the CCS on January 28, 2010. Plaintiff was subsequently approved to receive the Diet. Only Central Classification Services has the authority to approve a Diet application, and WARSP staff does not have the authority to either grant the request on its own or to override the decision of the Central Classification Services. (Watson Aff. ¶ 4.)

Plaintiff complains that he waited nearly a year to have his application approved and he had to eat foods in violation of his religious beliefs during that time. Plaintiff alleges that Osbourne "deliberately and intentionally prevented [him] from practicing [his] religion . . . by refusing to send [his] paperwork to [CCS] . . . in a reasonable amount of time . . . ." (Compl. 3.) TPS Hensley allegedly failed to correct his subordinate's act after plaintiff informed Hensley of the delay. Although Harvey and Watson had access to institutional records, they allegedly failed to correct their subordinates' alleged unconstitutional acts. Plaintiff requests an injunction to have Osbourne correctly file plaintiff's Diet application and for the other defendants to supervise their subordinates' handling of the application.[1] Plaintiff also requests costs for this action and any other relief to which he may be entitled.

---

[1] Since filing this action, the CCS approved plaintiff's application, and he receives the Diet. Accordingly, plaintiff's request for injunctive relief is moot.

2

II.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts or

---

[2]The parties received reasonable and explicit notice that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk issued a timely Roseboro notice. See Fed. R. Civ. P. 12(d); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

3

weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

The defendants argue that they are entitled to qualified immunity because plaintiff fails to state a claim upon which relief may be granted. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993). However, a defendant must demonstrate that the right was not clearly established at the time of the incident

4

to receive qualified immunity. Henry v. Purnell, 501 F.3d 374, 378 (4th Cir. 2007). Accordingly, in order to avoid summary judgment on the basis of qualified immunity, plaintiff must produce sufficient admissible evidence from which a jury could conclude that the defendants violated his First Amendment right to the free exercise of religion by the delay to receive the diet and that the delay was a clearly established violation of constitutional law at the time of the violation. Whether a defendant can claim qualified immunity is a pure question of law and is properly determined pretrial. Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (modified by Pearson v. Callahan, 129 S. Ct. 808 (Jan. 21, 2009) (permitting lower courts the discretion to determine which qualified immunity prong to analyze first)).

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Generally, to prevail on a First Amendment claim, a prisoner plaintiff must show that a prison regulation is not reasonably related to penological interests. Turner v. Safley, 482 U.S. 78, 89-90 (1987). See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997). Factors relevant to determine the reasonableness of a regulation include (1) the connection between the regulation and a legitimate, neutral government purpose; (2) the existence of alternative means of exercising the right; (3) the impact accommodation of the right would have on guards, other inmates, and prison resources; and (4) the absence of ready alternatives to the regulation. Turner, 482 U.S. at 89-91. In applying these factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F. 2d 83, 86 (4th Cir. 1991).

Plaintiff's core complaint is that Osbourne allegedly delayed in processing his Diet application; thus, plaintiff does not challenge the VDOC Diet-approval policy but instead

5

complains about how Osbourne implemented that policy. Therefore, this claim is more a claim of Osbourne's negligent deviation from policy. However, claims of negligence are not cognizable in a Bivens action. See Jones v. Salt Lake Cnty., 503 F.3d 1147, 1162 (10th Cir. 2007) (stating plaintiff's first amendment claim failed because it was the defendants' negligence, not the prison's regulations, which caused plaintiff's alleged injuries). See also Farmer v. Brennan, 511 U.S. 825, 839-40 (1994) (finding that case law involving § 1983 claims is applicable in Bivens actions, and vice versa).

Plaintiff fails to carry his burden to show that Osbourne violated plaintiff's free exercise of religion, and his allegations are devoid of any indication that Osbourne maliciously or otherwise intentionally delayed in processing the application between November and January. The appreciable delay attributable to Osbourne would be between November 17, 2009, when WARSP staff received the CCS' request for more information, and January 28, 2010, when Osbourne returned the updated application to the CCS for its review. Furthermore, case law establishes the VDOC's right to screen and approve Diet applications, and the allegation that Osbourne's three months' delay in submitting the Diet application constitutes a constitutional violation is without legal support at the time of these events. See, e.g., Sizemore v. Williford, 829 F.2d 608, 610 (7th Cir. 1987) ("[M]erely alleging an isolated delay or some other relatively short-term, non content-based disruption in the delivery of inmate reading materials will not support, even as against a motion to dismiss, a cause of action grounded upon the First Amendment."). Accordingly, Osbourne is entitled to qualified immunity.

Defendants Hensley, Harvey, and Watson are also entitled to qualified immunity. Plaintiff accused Hensley of failing to investigate Osbourne's alleged unconstitutional delay in

6

processing the application, which is not, as discussed supra, an actionable constitutional claim. Furthermore, to the extent that Hensley did investigate, there was nothing to do. Plaintiff states that on November 3, 2009, he asked Hensley to investigate whether Osbourne processed his request. However, Osborne had already submitted plaintiff's application to the CCS and was awaiting a decision. It was not until November 17, 2009, that Osborne received the CCS' request for more information. Harvey, as the Assistant Warden, had no personal involvement with plaintiff's application. Although plaintiff states that Harvey disapproved his Diet application, WARSP officials cannot approve a Diet application and merely forward it to the CCS for evaluation. Therefore, Harvey did not have the authority to grant or reject a prisoner's Diet application. To the extent that Harvey was asked if plaintiff could receive the Diet without the approval of CCS, Harvey was required to refuse. Other than processing grievances, Watson had no personal involvement with plaintiff's Diet application. Watson's investigation of the grievance indicated that Osborne had processed the paperwork and it was pending before the CCS; therefore, there was also nothing for Watson to act upon. Without personal involvement with plaintiff and his claim, the only basis for suit against Watson and Harvey would be under respondeat superior, which is not available in actions brought under Bivens. See Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977).

III.

For the foregoing reasons, I grant the defendants' motion for summary judgment.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and counsel of record for the defendants.

ENTER: This 17th day of December, 2010.

Senior United States District Judge